United States District Court
Southern District of New York
-------------------------------------------------------x

Whalehaven Capital Fund, Ltd. and
Alpha Capital Anstalt,

                              Plaintiffs,                    <u>Complaint</u>

                v.                                          10 Civ. 9490

Radient Pharmaceuticals Corporation,
and John Does 1-10,

                              Defendants.

-------------------------------------------------------x

      Plaintiffs Whalehaven Capital Fund, Ltd. and Alpha Capital Anstalt, by their attorneys,

for their Complaint herein, respectfully allege:


<u>the parties</u>


      1.  Plaintiff Whalehaven Capital Fund, Ltd. ("Whalehaven") is a Bermuda corporation

with its principal place of business in New Jersey.


      2.  Plaintiff Alpha Capital Anstalt ("Alpha Capital") is a Liechtenstein corporation with

its principal place of business in Balzers, Liechtenstein.


      3.  Upon information and belief, Radient Pharmaceuticals Corporation ("RPC") is a

Delaware corporation with its principal place of business located at 2492 Walnut Avenue, Tustin,

CA 92780.

4.  Upon information and belief, Defendants John Does 1-10 are persons presently unknown who are citizens of states other than New Jersey who participated along with RPC in the scheme to defeat shareholder approval of Proposal 5, as hereafter set forth, in violation of Plaintiffs' contract rights.

jurisdiction and venue

5.  Jurisdiction is proper under 28 U.S.C. §1332(a)(2) in that it is an action between citizens of a state and citizens or subjects of a foreign state and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Venue is proper under 28 U.S.C. §1391(a) in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred and pursuant to the agreement of the parties.

factual allegations common
to all claims

6.  On or about November 30, 2009, Whalehaven purchased 1,428,571 shares of RPC common stock from RPC for $400,000 and Alpha Capital purchased 1,860,714 shares of RPC common stock from RPC for $529,000 (together the "Shares") pursuant to the Securities Purchase Agreement. In connection with such purchases, Whalehaven and Alpha Capital also received, respectively, warrants (the "Warrants") to purchase 714,286 and 930,357 shares of RPC

common stock (total 1,644,643 shares). (The shares underlying the Warrant are hereafter referred to as the "Warrant Shares"). The Warrants contained an initial Exercise Price of $1.25 per share.

The terms of the Warrants and
the Securities Purchase Agreement

7.  The Warrants contained a "ratchet down" provision whereby the Exercise Price would be adjusted downward, and the number of shares covered by the Warrants would be increased, upon the happening of certain events. That provision was important to Plaintiffs because it prevented dilution of the value of the Warrants for which they negotiated in order to make their respective investments. One of those events was RPC's future issuance of, or agreement to issue, shares at an effective price per share less than the then effective Exercise Price (initially set at $1.25). In such event, the Exercise Price of the Warrants would be reduced to the effective price per share of the new issuance. Thus section 3(b) of the Warrants provides as follows:

> Subsequent Equity Sales. If the Company  . . . at any time while this Warrant is outstanding, shall sell or grant any option to purchase, or sell or grant any right to reprice, or otherwise dispose of or issue . . .  any Common Stock or Common Stock Equivalents entitling any Person to acquire shares of Common Stock, at an effective price per share less than the Exercise Price (such lower price, the "Base Share Price" and such issuances collectively, a "Dilutive Issuance") . . . then, the Exercise Price shall be reduced and only reduced to equal the Base Share Price and the number of Warrant Shares issuable hereunder shall be increased such that the aggregate Exercise Price payable hereunder, after taking into account the decrease in the Exercise Price, shall be equal to the aggregate Exercise Price prior to such adjustment; provided, however, that until such date Shareholder Approval is obtained and deemed effective, no adjustment shall occur hereunder; provided,

<u>further</u>, that upon Shareholder Approval, any adjustments that did not occur because of this proviso shall be immediately deemed effective."

8. In the event the Exercise Price of the Warrants was reduced, the Warrants provided that the number of shares of common stock covered by the Warrants would increase. The Warrants provided that the aggregate Exercise Price payable by Plaintiffs in the event they exercised their respective Warrants in full  - i.e., 1,644,643 total initial Warrant Shares times $1.25 initial Exercise Price per share = $2,055,804 - would remain the same, both before and after any decrease in the Exercise Price. Thus Plaintiffs retained the right to "invest" $2,055,804 in RPC through exercise of their respective Warrants regardless of any decrease in the applicable Exercise Price. (The Warrants contained a cashless exercise provision so that Plaintiffs need not make an actual cash investment in RPC to exercise their respective Warrants.) The number of shares of common stock covered by the Warrants, however, would increase upon any decrease in the Exercise Price because the Exercise Price for each share would be lower. (By way of example, if the Exercise Price were reduced from $1.25 to $0.50, then Plaintiffs would have the right to acquire 4,111,608 Warrant Shares ($2,055,804 divided by $0.50) instead of the initial number of Warrant Shares. If the Exercise Price were reduced to $0.10, then Plaintiffs would have the right to acquire 20,558,040 Warrant Shares.)

9. The Securities Purchase Agreement also obligated RPC to list the Shares and the Warrant Shares on the Trading Market where RPC stock was traded so that Plaintiffs could sell them on the open market. Because the number of Shares and Warrant Shares which RPC agreed

to list exceeded twenty percent of RPC's then outstanding shares, shareholder approval of the

issuance of the shares in excess of such 20% was required under NYSE AMEX rules in order to

list such excess Shares and Warrant Shares. RPC agreed in the Securities Purchase Agreement to

obtain such shareholder approval. Thus Paragraph 4.10 of the Securities Purchase Agreement

provides as follows:

> Listing of Common Stock. The Company hereby agrees to use best
> efforts to maintain the listing or quotation of the Common Stock
> on the Trading Market on which it is currently listed, and
> concurrently with the Closing, the Company shall apply to list or
> quote all of the Shares and Warrants Shares on such Trading
> Market and promptly secure the listing of all of the Shares and
> Warrants Shares on such Trading Market. . . .  In addition, at the
> earliest meeting of shareholders (which may also be at the annual
> meeting of shareholders) the Company shall seek to obtain
> Shareholder Approval, with the recommendation of the Company's
> Board of Directors that such proposal be approved, and the
> company shall solicit proxies from its shareholders in connection
> with in the same manner as all other management proposals in the
> proxy statement and all management-appointed proxy holders shall
> vote their proxies in favor of such a proposal.

10.  Shareholder approval was defined in the Securities Purchase Agreement as follows:

> "Shareholder Approval" means such approval as may be required
> by the applicable rules and regulations of the NYSE AMEX (or
> any successor entity) for the shareholders of the Company with
> respect to the transactions contemplated by the Transaction
> Documents, including the issuance of all of the Shares and
> Warrants Shares in excess of 19.99% of the issued and outstanding
> Common Stock on the Closing Date.

RPC agreed that it would recommend to its shareholders approval of such share issuance.

RPC triggers the ratchet down
<u>provision of the Warrant</u>

11.  From March 22, 2010 through April 26, 2010, on four occasions, RPC issued

Convertible Promissory Notes (the "Notes") to various investors. Those Notes were convertible,

in whole in or part, into shares of RPC common stock at a price of $0.28 per share. Thus because

the Convertible Notes gave the holders thereof the ability to acquire shares of RPC common

stock at a price lower than $1.25 per share, the issuance of the Notes triggered the ratchet down

provisions of the Warrant. Although $0.28 was the nominal price at which a Note holder could

obtain shares of RPC common stock upon conversion of the Notes, the effective price at which a

Note holder could obtain RPC common stock, which is the relevant price for purposes of the

ratchet down calculation under the Warrant, was actually $0.0943.


12.  Plaintiffs requested RPC to honor the terms of the ratchet down provision and to

acknowledge the new, lower Exercise Price of $0.0943 and that the Warrants now covered

21,800,673 shares of RPC common stock. RPC refused to do so.


<u>RPC obtains shareholder approval</u>


13.  In a delayed attempt to comply with its contractual obligation to obtain Shareholder

Approval, as required by the Securities Purchase Agreement since November 2009, RPC, on or

about June 22, 2010, filed a preliminary Proxy Statement (Form 14a), which is the disclosure

document pursuant to which RPC sought to solicit shareholder proxies for approval of the

transaction with Plaintiffs under the Securities Purchase Agreement and for other shareholder

resolutions (having nothing to do with the Securities Purchase Agreement). Alpha Capital

requested that RPC make certain changes to the proposed resolution relating to their transaction

because it did not properly reflect the transaction.

14. After negotiation, the parties agreed in writing on August 29, 2010 that the Exercise

Price of the Warrant would be reduced to $0.28 and the Warrant would be extended to cover

12,576,842 shares of common stock. Agreeing to that Exercise Price represented a concession on

Plaintiffs' part because the contractually agreed upon exercise price was lower. RPC would

present two resolutions to a shareholder vote: one would request shareholder approval to issue

presently up to 12,576,842 shares upon exercise of the Warrants (5,462,257 for Whalehaven and

7,114,585 for Alpha Capital) at the reduced Exercise Price of $0.28; the second would request

shareholder approval to issue in the future such number of shares as may be required to meet

RPC's obligations under the anti-dilution provisions of the Warrants. The agreement provided

that if four or fewer proposals in the Proxy Statement did not pass (there were fourteen proposals

being submitted for shareholder approval), then Plaintiffs were not thereafter bound by their

agreement regarding the $0.28 reduced Exercise Price or that the Warrant covered only

12,576,842 shares of common stock.

15. Pursuant to that agreement, RPC submitted resolutions 5 and 6 (out of a total of

fourteen resolution) at the shareholders meeting held on December 3, 2010. Resolution 5 was

designed to obtain approval of the compromise reached by the parties with respect to the new

Exercise Price of, and number of shares to be covered by, the Warrants. Resolution 6 was to

designed to obtain shareholder approval for all shares which RPC would thereafter issue pursuant

to the ratchet down provisions of the Warrants. Those proposals provided as follows:

5.    **APPROVE AND RATIFY THE ISSUANCE OF SHARES OF COMMON STOCK UNDERLYING WARRANTS TO PUR-CHASE UP TO 10,932,199 SHARES OF COMMON STOCK BELOW THE GREATER OF A SHARE OF COMMON STOCK'S BOOK VALUE OR MARKET VALUE AT THE TIME OF ISSUANCE AND A REDUCTION IN THE EXER-CISE PRICE OF 1,644,643 PREVIOUSLY ISSUED WAR-RANTS**: A proposal to approve and ratify the issuance of shares of common stock underlying warrants to purchase up to 10,932,199 shares of our common stock, representing an additional approxi-mate 23% of outstanding shares as of the date hereof, and the reduction of the warrant exercise price from $1.25 to $0.28 per share for warrants originally issued in connection with the private offering that we closed on November 30, 2009, pursuant to which we issued 3,289,285 shares of our common stock and warrants to purchase an aggregate of 1,644,643 shares of our common stock (the "Registered Direct 2009 Offering"). If this Proposal is ap-proved, then the purchasers in the Registered Direct 2009 Offering will have received warrants to purchase a total of 12,576,842 shares of common stock at an exercise price of $0.28 per share, and the reduced per-share exercise price may be below the greater of a share of our common stock's book value of its market value at the time of issuance;

6.    **APPROVE AND RATIFY THE RIGHT TO ISSUE ADDI-TIONAL SHARES OF COMMON STOCK AS MAY BE REQUIRED PURSUANT TO THE ANTI-DILUTION TERMS OF CERTAIN WARRANTS IN THE FUTURE IF SUCH AN ADJUSTMENT IS REQUIRED**: A proposal to approve and ratify management's right to issue, in the future, that number of additional shares of common stock upon exercise of the Registered Direct Offering Warrants as may be required upon further implementation of, and in accordance with, the anti-dilution adjustments set forth in the warrants, so that we will be able to comply with all of the anti-dilution rights granted in the warrant, if

8

such adjustments should become necessary in the future. If this
Proposal is approved. then the purchasers in the Registered Direct
2009 Offering may receive any number of additional warrants in
the future if their anti-dilution results are triggered at a price per
share that is below the greater of a share of our common stock's
book or market value at the time of issuance.

16.    At the shareholders meeting on December 3, 2010, the shareholders failed to approve

proposal 5. The shareholders, however, did approve proposal 6 and all of the other proposals

contained in the Proxy Statement. Because proposal 5, which would have ratified the settlement

reached between Plaintiffs and RPC, was the only one not to obtain shareholder approval,

Plaintiffs informed RPC that they were no longer bound by the terms of the settlement. As a

result, after proposal 5 was not approved, RPC became obligated to reduce the Exercise Price of

the Warrants to $0.0943 in accordance with the terms thereof (not in accordance with the

settlement) and became further obligated to increase the number of shares covered by the

Warrants to at least 21,800,673 in accordance with the terms of the Warrants (not in accordance

with the settlement) and to issue those shares upon Plaintiffs' exercise of their respective

Warrants. Whalehaven exercised a portion of its Warrant on December 7, 2010 for 6 million

Warrant Shares. Alpha Capital exercised a portion of its Warrant on December 6, 2010 for

5,631,191 Warrant Shares.

17.    Shareholder approval of proposal 6 constituted shareholder approval of the issuance

of all Warrant Shares necessary for RPC to meet its obligations to Plaintiffs under the Warrants.

Proposal 6 specifically authorized RPC to issue in the future, upon exercise of the Warrants,

"that number of additional shares of common stock upon exercise of the Registered Direct

Offering Warrants [the Warrants] as may be required upon further implementation of, and in accordance with, the anti-dilution adjustments set forth in the warrants, so that we will be able to comply with all of the anti-dilution rights granted in the warrant . . . " There is no limit on the number of shares of common stock authorized by the shareholders. Thus the shareholders approved issuance of whatever number of Warrant Shares of common stock were necessary to comply with RPC's obligations to Plaintiffs, including the Warrant Shares requested by Plaintiffs pursuant to their respective Warrant exercise notices.

Failure to reserve shares

18. RPC is obligated to reserve sufficient shares to meet its obligations to issue Warrant Shares under the Warrants. Thus para. 5(d) of the Warrants provides:

> The Company covenants that, during the period the Warrant is outstanding, it will reserve from its authorized and unissued Common Stock a sufficient number of shares to provide for the issuance of the Warrant Shares upon the exercise of any purchase rights under this Warrant.

RPC is obligated to reserve at least 21,800,673 shares of its common stock to meet its current obligations to Plaintiffs to reserve shares, subject to further increase under the terms of the Warrants and Securities Purchase Agreement.

19. RPC has not reserved any shares to comply with is obligation to do so.

10

<u>First Claim for Relief</u>
(Breach of Obligation to Deliver Warrant Shares
Relief Requested - Preliminary and Permanent Injunction)

20.  Plaintiffs reallege paragraphs1 through 19.


21.  As a result of the issuance of the Notes, the Exercise Price of the Warrants has been reduced to $0.0943 and the number of shares covered by the Warrants has been increased to at least 21,800,673, subject to further adjustment in accordance with the terms of the Warrants and the Securities Purchase Agreement.


22.  RPC has failed and refused to acknowledge that the Exercise Price of the Warrants has been reduced to $0.0943 and the number of shares covered by the Warrants has been increased to at least 21,800,673, subject to further adjustment in accordance with the terms of the Warrants and the Securities Purchase Agreement.


23. On December 3, 2010, the RPC shareholders approved issuance of all Warrant Shares required for RPC to comply with its obligations under the Warrants.


24.  Notwithstanding such shareholder approval, RPC has failed to honor conversion notices duly submitted by Plaintiffs to convert a portion of their respective Warrants into Warrant shares in accordance with the adjusted Exercise Price and number of shares covered by the Warrants, as set forth above.

11

25. Plaintiffs have no adequate remedy at law.

26. As a result, Plaintiffs are entitled to an order, pending final determination of this action and permanently, declaring that the Exercise Price of the Warrants is $0.0943 and that the Warrants cover at least 21,800,673 shares, subject to further adjustment in accordance with the terms of the Warrants and the Securities Purchase Agreement, and directing RPC to honor all conversion notices duly submitted by Plaintiffs, in accordance with the terms of the Warrants and the Securities Purchase Agreement.

<u>Second Claim for Relief</u>
(Breach of Obligation to Deliver Warrant Shares
Relief Requested - Damages)

27. Plaintiffs reallege paragraphs 1 through 24.

28. As a result of RPC's failure to acknowledge the adjusted Exercise Price and number of Warrant Shares covered by the Warrants and to deliver shares in response to the duly submitted exercise notices, Plaintiffs have been damaged in an amount to be determined at trial.

<u>Third Claim for Relief</u>
(breach of contract
relief requested - preliminary and permanent injunction)

29. Plaintiffs reallege paragraphs 1 through 19.

12

30.  RPC agreed that it would use its best efforts to maintain the listing or quotation of the Common Stock on the Trading Market on which it is currently listed, and concurrently with the Closing, the Company shall apply to list or quote all of the Shares and Warrants Shares on such Trading Market and promptly secure the listing of all of the Shares and Warrants Shares on such Trading Market.

31.  RPC further agreed to recommend to shareholders that they approve a proposal to issue the Warrant Shares and to solicit proxies from its shareholders in connection therewith in the same manner as all other management proposals in the proxy statement and to have all management-appointed proxy holders vote their proxies in favor of such a proposal.

32.  In connection with the shareholders meeting held on December 3, 2010, RPC set forth proposal 5 which sought to obtain approval for issuance of Warrant Shares to Plaintiffs. RPC was contractually obligated to recommend to the shareholders adoption of such proposal.

33. In violation of its contract obligations, and with the knowing assistance and participation of Defendants John Does 1 - 10, upon information and belief, RPC, directly or indirectly, solicited shareholders to reject proposal 5. As a result, proposal 5 was the only proposal, out of the 14 proposals submitted for shareholder approval, not to by approved by the shareholders.

34.  Plaintiffs have no adequate remedy at law.

13

35. As a result of the wrongful actions of RPC and John Does 1 - 10, Plaintiffs are entitled to an injunction restraining and enjoining RPC, its officers, directors, agent and employees, John Does 1 - 10, and all those in active concert with them, from soliciting shareholders to reject any proposal to approve the issuance of Warrant Shares.

### Fourth Claim for Relief
(breach of contract
relief requested - damages)

36. Plaintiffs reallege paragraphs 1 through 19 and 30 through 33.

37. As a result of RPC's breach of contract with the knowing assistance of John Does 1 - 10, Plaintiffs have suffered damages in an amount to be determined at trial.

### Fifth Claim for Relief
(breach of obligation of good faith and fair dealing
relief requested - preliminary and permanent injunction)

38. Plaintiffs reallege paragraphs 1 through 19.

39. In connection with the agreement between RPC and Plaintiffs in August 2010, RPC had an obligation of good faith and fair dealing to bring about shareholder passage of proposal 5 of the proposals submitted for shareholder approval at the shareholders meeting on December 3, 2010.

14

40. In violation of such obligation, and with the knowing assistance and participation of Defendants John Does 1 - 10, upon information and belief, RPC, directly or indirectly, solicited shareholders to reject proposal 5. As a result, proposal 5 was the only proposal, out of the 14 proposals submitted for shareholder approval, not to by approved by the shareholders.

41. Plaintiffs have no adequate remedy at law.

42. As a result of the wrongful actions of RPC and John Does 1 - 10, Plaintiffs are entitled to an injunction retraining and enjoining RPC, its officers, directors, agent and employees, John Does 1 - 10, and all those in active concert with them, from soliciting shareholders to reject any proposal to approve the issuance of Warrant Shares.

<u>Sixth Claim for Relief</u>
(breach of obligation of good faith and fair dealing
relief requested - damages)

43. Plaintiffs reallege paragraphs 1 through 19, 39 and 40.

44. As a result of RPC's breach of its obligation of good faith and fair dealing, with the knowing assistance of John Does 1 - 10, Plaintiffs have suffered damages in an amount to be determined at trial.

Seventh Claim for Relief
(intentional interference with contract rights/business relations
relief requested - preliminary and permanent injunction)

45.  Plaintiffs reallege paragraphs 1 through 19.


46.  John Does 1 - 10 knew that RPC was party to the Warrants and the Securities
Purchase Agreement along with Plaintiffs. They knew that RPC had an obligation to recommend
approval of proposal 5 and to use its best efforts to assure passage of proposal 5. They knew that
Plaintiffs could obtain Warrant Shares immediately upon shareholder approval of proposal 5.


47.  Notwithstanding such knowledge, John Does 1 - 10, directly or indirectly, upon
information and belief, contacted the shareholders and solicited them to reject proposal 5 in an
attempt to deprive Plaintiffs of their ability to obtain Warrant Shares immediately and sell them
on the open market.


48.  Upon information and belief, John Does 1 - 10 utilized improper means, including
but not limited to misrepresentations, in soliciting the shareholders to reject proposal 5.


49.  Plaintiffs have no adequate remedy at law.

50.  As a result of their wrongful actions, Plaintiffs are entitled to an injunction restraining and enjoining John Does 1 - 10, and all those in active concert with them, from soliciting shareholders to reject any proposal to approve the issuance of Warrant Shares.

## Eighth Claim for Relief
(intentional interference with contract rights/business relations
relief requested - damages)

51.  Plaintiffs reallege paragraphs 1 through 19 and 46 through 48.

52.  As a result of their wrongful actions, John Does 1 - 10 are liable to Plaintiffs for damages in an amount to be determined at trial.

## Ninth Claim for Relief
(failure to reserve shares
relief requested - order directing reservation of shares)

53.  Plaintiffs reallage paragraphs 1 through 19.

54.  Plaintiffs are entitled to an order directing RPC to reserve at least 21,800,673 shares of its common stock to meet its current obligations to Plaintiffs to reserve shares, subject to further increase under the terms of the Warrant and Securities Purchase Agreement.

### Tenth Claim for Relief
(Attorneys' Fees)

55.  Plaintiffs reallege paragraphs 1 through 19.


56.  Pursuant to ¶5.9 of the Securities Purchase Agreement, in the event suit is commenced to enforce any provisions of the Transaction Documents, then the prevailing party shall be entitled to be reimbursed by the other party for its reasonable attorney's fees and its other costs and expenses incurred with the investigation, preparation and prosecution of such action.


55.  As a result of its wrongful actions set forth herein, RPC is liable to Plaintiffs for their reasonable attorneys fees and other costs and expenses incurred in connection with the investigation, preparation and prosecution of this action.


Wherefore, Plaintiffs Whalehaven Capital Fund, Ltd. and Alpha Capital Anstalt, demand judgment against Defendants Radient Pharmaceuticals Corporation and John Does 1 - 10 as follows:


i) on the First Claim for Relief against Defendant Radient Pharmaceuticals Corporation for an order, pending final determination of this case and permanently, declaring that the Exercise Price of the Warrants is $0.0943 and that the Warrants cover at least 21,800,673 shares, subject to further adjustment in accordance with the terms of the Warrants and the Securities Purchase Agreement, and directing RPC to honor all conversion notices duly submitted by

Plaintiffs, in accordance with the terms of the Warrants and the Securities Purchase Agreement; and.

      ii) on the Second, Fourth, Sixth and Eighth Claims for Relief for damages in the amount to be determined at trial plus interest on all such amounts; and

      iii) on the Third and Fifth Claims for Relief for an order restraining and enjoining RPC, its officers, directors, agent and employees, John Does 1 - 10, and all those in active concert with them, from soliciting shareholders to reject any proposal to approve the issuance of Warrant Shares; and

      iv) on the Seventh Claim for Relief for an order restraining and enjoining John Does 1 - 10, and all those in active concert with them, from soliciting shareholders to reject any proposal to approve the issuance of Warrant Shares; and

      v) on the Ninth Claim for Relief for an order directing RPC to reserve at least 21,800,673 shares of its common stock to meet its current obligations to Plaintiffs to reserve shares, subject to further increase under the terms of the Warrants and Securities Purchase Agreement.

      vi) on the Tenth Claim for Relief for an award of attorneys fees and the other costs and expenses incurred in connection with the investigation, preparation and prosecution of this action; and

vii) for the costs and disbursements of this action and such other, further and different relief as the Court deems just and proper.

Law Offices of Kenneth A. Zitter

By_____
     Kenneth A. Zitter
Attorneys for Plaintiffs
Whalehaven Capital Fund, Ltd. and
Alpha Capital Anstalt,
260 Madison Avenue, 18th Floor
New York, NY 10016
212-532-8000